**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Hospital and Healthcare Association, an Arizona corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Thomas J. Betlach, Director of the Arizona Healthcare Cost Containment System; Kathleen Sebelius, Secretary of the United States Department of Health and Human Services,<br><br>Defendants. | No. CV11-2348-PHX-DGC<br><br>**ORDER** |

Plaintiff Arizona Hospital and Healthcare Association ("Plaintiff") has filed a complaint against Defendants Thomas J. Betlach, as director of the Arizona Health Care Cost Containment System ("the Director"), and Kathleen Sebelius, as Secretary of the United States Department of Health and Human Services ("the Secretary"). Doc. 1. Plaintiffs allege that recent rate reductions in Arizona's Medicaid program violate federal Medicaid law, federal regulations, and state law, and that the Secretary's approval of these reductions is invalid under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, *et seq*.

The Director has filed a motion to dismiss Plaintiff's first three claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 28. The motion is fully briefed. Docs. 28, 32, 38. The Court heard oral argument on March 1, 2012. For the reasons that

follow, the Court will grant in part and deny in part the Director's motion to dismiss.

The factual background for this case is set forth in a companion order entered this date on Plaintiff's motion for a preliminary injunction. Doc. 64. The Court will not repeat that background here.

## I. Legal Standard.

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations "'are taken as true and construed in the light most favorable to the nonmoving party.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted). To avoid a Rule 12(b)(6) dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). Dismissal is appropriate where the complaint lacks a cognizable legal theory or lacks sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

## II. Discussion.

The Director moves to dismiss Plaintiff's first three claims for failure to state a claim under the Supremacy Clause and, for the first claim, under 42 U.S.C. § 1983. He asserts that because the Arizona legislature merely vested him with broad authority to make the challenged rate reductions, Plaintiff's preemption claims fail because there is no state law that actually conflicts with Section 13(A), Section 30(A), or 42 C.F.R. § 557.205. Doc. 28, at 6-8. For ease of explanation, the Court will address Claim Two, Claim One, and then Claim Three.

**A.  Claim Two: Section 30(A).**

**1.  Cost Study.**

Section 30(A) requires state programs "to provide such methods and procedures relating to the utilization of, and payment for, care and services available under the plan . . . as may be necessary . . . to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area[.]" 42 U.S.C. § 1396a(a)(30)(A).

In *Orthopaedic Hospital v. Belshe*, 103 F.3d 1491 (9th Cir. 1997) (*Orthopaedic II*), hospitals brought an action under 42 U.S.C. § 1983 challenging the adequacy of reimbursement rates set by the California legislature and alleging a violation of Section 30(A). The Ninth Circuit interpreted Section 30(A) as intending for payments to be flexible within a range: no higher than required to provide efficient and economical care, but still high enough to provide for quality care and to ensure access to services. *Orthopaedic II*, 103 F.3d at 1497. The Ninth Circuit held that "[t]he proper interpretation of [Section 30(A)]'s requirement that payments for services must be consistent with efficiency, economy, and quality of care, and access, requires the [California Department of Health Services] to consider the costs of providing hospital outpatient services." *Id.* at 1500. "To do this, the Department must rely on responsible cost studies, its own or others', that provide reliable data as a basis for its rate setting." *Id.* at 1496. The court found in *Orthopaedic II* that the California Department did not adequately consider hospitals' costs when adopting its reimbursement rates, and that its actions were therefore arbitrary and capricious. *Id.*

The Ninth Circuit subsequently held that Section 30(A) does not create an individual right that either Medicaid recipients or providers can enforce under § 1983, *Sanchez v. Johnson*, 416 F.3d 1051, 1062 (9th Cir. 2005), but this has not foreclosed judicial review. In *Independent Living Center of Southern California, Inc. v. Maxwell-*

*Jolly*, 572 F.3d 644 (9th Cir. 2009), health care advocates did not seek direct enforcement of any "rights" created by Section 30(A), but instead argued that legislation imposing a rate reduction conflicted with the federal requirements established in Section 30(A).[1] *Indep. Living Ctr.*, 572 F.3d at 652. Although the plaintiffs asserted a different theory of recovery than those in *Orthopaedic II*, the central question was still the purpose underlying Section 30(A). *Id.* at 653. The Ninth Circuit heard the matter and applied the process-oriented view of Section 30(A) espoused in *Orthopaedic II*. *Id.* at 657.

In *Orthopaedic II*, which involved a discretionary state statute like the one at issue here, the Ninth Circuit held that the director of California's Department of Health Services must consider responsible cost studies as a basis for setting rates. *Orthopaedic II*, 103 F.3d at 1496. The court later explained in *California Pharmacists Assocation v. Maxwell-Jolly*, 596 F.3d 1098 (9th Cir. 2010) ("*Cal. Pharm. II*"), that "if the legislature elects to by-pass the Department, and set rates itself, it must engage in the same principled analysis we required of the Director in *Orthopaedic II*." *Id*. at 1106.

Read together, *Orthopaedic II* and *Cal. Pharm. II* suggest that the state entity ultimately setting reimbursement rates must consider cost studies before doing so. Even if the legislature did not need to consider cost studies because it merely gave the Director the authority to set rates (Doc. 28, at 8), the Director has not given any reasons that absolve him from considering cost studies before implementing the rate cuts. The

---

[1] The Ninth Circuit has held that a plaintiff seeking injunctive relief under the Supremacy Clause on the basis of federal preemption need not assert a federally created "right," in the sense that the term has been used in suits brought under § 1983, but need only satisfy traditional standing requirements. *Indep. Living Ctr. of S. Cal. v. Shewry*, 543 F.3d 1050, 1058 (9th Cir. 2008). The Supreme Court granted certiori to address whether Medicaid recipients and providers may maintain a cause of action under the Supremacy Clause to enforce 42 U.S.C. § 1396a(a)(30)(A) of the Medicaid Act by asserting that the provision preempts a state law reducing reimbursement rates. *See Maxwell-Jolly v. Indep. Living Ctr. of S. Cal.*, 572 F.3d 644 (9th Cir. 2009), *cert. granted*, 131 S. Ct. 992 (2011) (No. 09-958). After the Court heard oral argument, CMS approved several of the California statutory amendments that were at issue in the consolidated cases. The Court vacated the Ninth Circuit's judgments and remanded to permit the parties to argue whether Medicaid recipients and providers may maintain Supremacy Clause actions now that CMS has approved the statutory amendments. *Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 132 S. Ct. 1204 (2012).

Director argues that because SB 1619 "only requires the Director to live within the AHCCCS appropriation," the "actions he takes to accomplish this goal are left to his discretion." Doc. 28, at 8, 11. While the Director may have authorization under SB 1619 to make rate cuts, he must still comply with Section 30(A) and its attendant procedural requirements as imposed by the Ninth Circuit in *Orthopaedic II*.

Plaintiff alleges that "[n]either the Legislature nor AHCCCSA appropriately considered the factors of efficiency, economy, quality of care and access to services prior to authorizing and/or adopting the 2011 [rate reductions] and seeking approval of such from CMS." Doc. 1, at 23, ¶ 63(b). Plaintiff further alleges that, to the extent the Director implemented the rate reductions after a purported study was completed, any reliance on the Milliman study was misplaced because it contained substantive and methodological flaws and was not a "reliable" cost study for purposes of compliance with Section 30(A). *Id.* at 17-18, ¶ 50(b)(iii). Accepting these factual allegations as true for purposes of this motion to dismiss, as the Court must, Plaintiff has properly stated a Supremacy Clause claim because the Director's failure to comply with Section 30(A) can be viewed as "interfer[ing] with the 'methods by which the federal statute was designed to reach [its] goal.'" *Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d at 653 (citation omitted). The Court will therefore deny the Director's motion to dismiss Claim Two.

### 2. Preemption.

SB 1619 provides: "Notwithstanding any other law, for rates effective October 1, 2011 through September 30, 2012, the Arizona health care cost containment system administration *may* reduce payments for institutional and noninstitutional services up to five per cent." Doc. 28, at 11, n.3; S.B. 1619, 50th Leg., 1st Sess. (Ariz. 2011) (emphasis added). Plaintiff does not allege that SB 1619 directly conflicts with any federal laws. Doc. 32, at 7. Plaintiff alleges that preemption exists "because the reduced rates that will result from the Reductions . . . stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in the enactment of [Section 30(A)].

Moreover, the [rate reductions] are preempted under the Supremacy Clause because the Director cannot simultaneously comply [with] Section 30(A) and implement and apply the [r]eductions." Doc. 1, at 24, ¶ 64.

Conflict preemption arises "when compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 653 (9th Cir. 2009) (citation omitted). Under the "obstacle" portion of this analysis – referred to as "obstruction" preemption – "an aberrant or hostile state rule is preempted to the extent it actually interferes with the 'methods by which the federal statute was designed to reach [its] goal.'" *Id.* (citations omitted).

The Director argues that the Supremacy Clause "does not preempt discretionary decisions made by state officials in the exercise of laws that do not conflict with federal law," and that "[t]he legislature's *authorization* of AHCCCS to consider reducing rates is fully consistent with the federal law." Doc. 28, at 8. The Director asserts, in essence, that a discretionary decision by a state regulator does not give rise to conflict preemption if it is inconsistent with federal law. He relies primarily on *G. v. Hawaii Department of Human Services*, Civ. Nos. 08-00551 ACK-BMK, 09-00044 ACK-BMK, 2009 WL 1322354 (D. Haw. May 11, 2009). Although the district court concluded in *Hawaii* that conflict preemption cannot arise in the absence of a state statute or regulation that conflicts with federal law, it relied primarily on dictum from an Eighth Circuit case that addressed tort claims. *See Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). The Director also cites district court decisions from Vermont and Texas, neither of which dismissed a Supremacy Clause claim for want of a state statute or regulation. *See McGRX, Inc. v. Vermont*, No. 5:10-cv-1, 2011 WL 31022 (D. Vt. Jan. 5, 2011); *Ross v. Houston Hous. Auth.*, No. H-09-2361, 2010 WL 1741357 (S.D. Tex. April 29, 2010).

Plaintiff responds with a general discussion of preemption law that relies primarily

on field preemption cases clearly inapplicable to the conflict preemption issue at hand. *See* Doc. 32, at 4-5. Plaintiff relies primarily on *Cal. Pharm. II*, 596 F.3d 1098, a case that addressed a California statute mandating a reduction in Medicaid reimbursement rates. In *Cal. Pharm. II*, the defendants argued that the statute mandating a reduction in Medicaid reimbursement rates was not invalid under the Supremacy Clause because the Medi-Cal director had discretion to delay implementation of the reductions until a suitable cost study had been considered. *Id.* at 1109-1110. The Ninth Circuit disagreed that the director retained discretion not to implement the rate reductions, and observed that regardless of whether the director retained such discretion, the required cost analysis was never completed at any level of California government. *Id.* at 1112. *Cal. Pharm. II* does not support Plaintiff's argument for preemption because that case did not address a statute like SB 1619, which grants the Director full discretion to implement rate reductions within the prescribed range.

Plaintiff also attaches two orders from the Central District of California that granted preliminary injunctions on Medicaid rate reductions. Doc. 32, Exs. A, B. Plaintiff claims that the facts underlying these two cases are analogous to the instant case because "the statutory authority for the rate reduction[s] clearly and expressly vested the state Medicaid agency with the *discretion* not to implement the reduction[.]" Doc. 32, at 5 (emphasis added). The attached orders do not support this assertion. One order simply states that the statute "authorizes the Director to reduce the Medi-Cal payment rates for various categories of services" and that "[m]ost of the rate reductions called for are flat 10 percent reductions." *Cal. Hosp. Ass'n v. Douglas*, No. CV 11-9078 CAS (MANx), 2011 WL 6820229, at *1 (C.D. Cal. Dec. 28, 2011). The other order describes a statute "which provides that the Director *shall* reduce fee-for-service payments to pharmacies by 10 percent[.]" *Managed Pharmacy Care v. Sebelius*, No. CV 11-9211 CAS (MANx), 2011 WL 6820288, at *1 (C.D. Cal. Dec. 28, 2011) (emphasis added).

In sum, with the exception of the Hawaii district court decision cited by the Director, neither the Director nor Plaintiff has cited authority on the specific conflict

1  preemption issue raised in the Director's motion to dismiss. The Court finds that the *Hawaii* decision is too thin a reed upon which to base a decision to dismiss Claim Two as legally insufficient. The Court will revisit the viability of Plaintiff's preemption argument at the summary judgment stage, with the benefit of further factual development and after the parties have had an opportunity to provide more complete briefing on this issue.

With respect to Claims One and Three, the Director reiterates, "the Complaint once again fails to demonstrate any conflict between state and federal law." Doc. 28, at 11. Because this is the same argument that the Director made with respect to Claim Two, the Court will deny the motion to dismiss Claims One and Three on Supremacy Clause grounds for the reasons discussed above. The Court will address the Director's remaining arguments regarding these claims.

**B.    Claim One: Section 13(A).**

**1.    Supremacy Clauses.**

Section 13(A) provides for a "public process for determination of rates of payment under the [state] plan for hospital services," including publication of proposed rates, final rates, and methodologies. 42 U.S.C. § 1396a(a)(13)(A). The statute requires that "providers, beneficiaries and their representatives, and other concerned State residents [be] given a *reasonable opportunity* for review and comment on the proposed rates, methodologies, and justifications[.]" 42 U.S.C. § 1396a(a)(13)(A)(ii) (emphasis added). The Director argues that Claim One is factually flawed because Plaintiff had notice of the proposed reductions before they took effect and admits to providing CMS with extensive materials showing that the rate reductions would have adverse effects. Doc. 28, at 11-12 (citing Doc. 1, at 15-16, ¶ 47).

The Director points to a July 15, 2011 notice published in the Arizona Administrative Register which states that AHCCCSA will reduce the rates at issue by five percent. Doc. 28, at 12. While this notice was given before CMS approved the three SPAs on November 18-19, 2011 (Doc. 1, at 16, ¶ 48), it was given after the Director

submitted the SPAs to CMS for approval on June 23-24, 2011 (Doc. 1, at 11-12, ¶¶ 37-39). Plaintiff claims that any opportunity the hospitals had to comment could not have been meaningful when the terms of the reductions had already been presented to CMS, and was therefore not "a reasonable opportunity" under Section 13(A). Doc. 1, at 22, ¶ 59. On its face, the complaint pleads enough facts to state a Supremacy Clause claim for violation of Section 13(A).

### 2.  Section 1983.

The Director argues that Plaintiff does not have a private cause of action under § 1983 for an alleged violation of Section 13(A). Doc. 54, at 3-4. While the Ninth Circuit has not directly examined the existence of such a claim, it has held that there is no § 1983 claim for a violation of Section 30(A). *See Sanchez v. Johnson*, 416 F.3d 1051 (9th Cir. 2005).

In *Maine v. Thiboutot*, 448 U.S. 1 (1980), the Supreme Court held that § 1983 permits suits against state officials to enforce statutes enacted pursuant to Congress's spending power. *Thiboutot*, 448 U.S. at 4-5. The Supreme Court stated that § 1983 remedies were to be applied sparingly and only to statutes in which Congress "speak[s] with a clear voice" and "unambiguously" creates "rights secured by the laws of the United States." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 28 (1981). In making this determination, three factors are to be considered: (1) "Congress must have intended that the provision in question benefit the plaintiff," (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence," and (3) "the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms." *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997).

The Supreme Court further clarified its private right of action jurisprudence in *Gonzaga University v. Doe*, 536 U.S. 273 (2002):

> We now reject the notion that our cases permit anything short of an

unambiguously conferred right to support a cause of action brought under § 1983. Section 1983 provides a remedy only for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. Accordingly, it is *rights*, not the broader or vaguer "benefits" or "interests," that may be enforced under the authority of that section.

*Gonzaga*, 536 U.S. at 283. "The Court repeatedly stressed that it is Congress's use of explicit, individually focused, rights-creating language that reveals congressional intent to create an individually enforceable right in a spending statute." *Sanchez*, 416 F.3d at 1057. The Ninth Circuit has instructed that statutory indicia must leave a court "without any doubt that Congress intended to create an individual, enforceable right remediable under § 1983." *Sanchez*, 416 F.3d at 1058.

A prior version of Section 13(A), dubbed the Boren Amendment, required States to reimburse hospitals at rates that are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." *Orthopaedic II*, 103 F.3d at 1498 n.2 (quoting the Boren Amendment). In response to unforeseen litigation brought on by the Supreme Court's holding in *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498 (1990), that the Boren Amendment was enforceable in a § 1983 action by healthcare providers against states, Congress repealed the Boren Amendment in 1997 and replaced it with the current Section 13(A). *See Alaska Dept. of Health & Soc. Servs. v. Ctrs. for Medicare & Medicaid Servs.*, 424 F.3d 931, 941 (9th Cir. 2005). "In doing so, Congress intended that there be no 'cause of action for [providers] relative to the adequacy of the rates they receive." *Id.* (quoting *Evergreen Presbyterian Ministries Inc. v. Hood*, 235 F.3d 908, 919 n.12 (5th Cir. 2000)).

The Director argues that "[i]f Congress, in an effort to reduce litigation over 13(A), intended providers to have no cause of action regarding the substance of the rates established by 13(A), it makes no sense to suggest Congress gave providers an implicit cause of action over the procedural requirements it enacted." Doc. 38, at 9. The Third Circuit has reached the same conclusion, holding that "by replacing the Boren

Amendment with a requirement that a state establish a public process by which its rates would be determined, Congress has removed a party's ability to enforce any substantive right." *Children's Seashore House v. Waldman*, 197 F.3d 654, 659 (3d Cir. 1999).

The Director also contends that the focus of Section 13(A) is not on individuals, but rather on assuring the Secretary that the State uses a public process that provides interested parties a reasonable opportunity to review and comment. *Id.* at 10. This position comports with the Ninth Circuit's reasoning in *Independent Acceptance Co. v. California*, 204 F.3d 1247 (9th Cir. 2000). The court limited itself to reviewing the Secretary's approval of the state plan amendments, noting that "[t]he regulations provide that the State's 'assurances' of notice and of compliance with certain other requirements," including § 447.205, "must be 'satisfactory' to the Secretary" rather than to the court. *Indep. Acceptance Co.*, 204 F.3d at 1251-52 (quoting 42 C.F.R. § 447.253(a), (h)).

As a result, Section 13(A) falls well short of the "unambiguously conferred right" that *Gonzaga* requires to support a cause of action under § 1983. *Gonzaga*, 536 U.S. at 283. The Court need not consider the remaining *Blessing* factors because the language of Section 13(A) leaves doubt as to whether Congress intended to create an individual right. *See Sanchez*, 416 F.3d at 1058. The Court concludes that there is no private right of action under § 1983 for a Section 13(A) violation.[2]

### C.   Claim Three:  42 C.F.R. § 447.205.

The Director argues that Plaintiff has not made any credible allegations that it lacked meaningful notice. Doc. 28, at 12. Plaintiff responds that "Section 13(A) expressly calls for both notice <u>and</u> a reasonable opportunity for public comment," and asks the Court to find that it has alleged sufficient facts to state a claim under both

---

[2] The Court's conclusion accords with the Second Circuit, which affirmed that healthcare providers had no enforceable federal rights under Section 13(A). *New York Ass'n of Homes & Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147 (2d Cir. 2006). The Court recognizes that contrary authority exists. *See, e.g.*, *Am. Soc'y of Consultant Pharmacists v. Concannon*, 214 F. Supp. 2d 23, 27-28 (D. Me. 2002).

- 11 -

Section 13(A) and 42 C.F.R. § 447.205.  Doc. 32, at 13.  Plaintiff cites portions of the complaint alleging that the impacted parties were not given a reasonable opportunity to comment on the rate reductions because the Director only gave formal notice after the relevant SPAs had already been submitted to CMS for approval.  Doc. 1, ¶¶ 50(a), 58-61.

Unlike Section 13(A), however, Section 447.205 does not require a reasonable opportunity for public comment.  It requires public notice of any significant proposed change in methods and standards for setting payment rates for services.  42 C.F.R. § 447.205(a).  It imposes requirements for the content and publication of the notice, including that the notice "[b]e published before the proposed effective date of the change[.]"  42 C.F.R. § 447.205(d)(1).  Formal notice of the rate changes was given on July 15, 2011.  *See* Doc. 7-8, at 2 (Ex. G, Arizona Administrative Register notice).  The effective date of the rate changes was October 1, 2011.  S.B. 1619, 50th Leg., 1st Sess. (Ariz. 2011).

Plaintiff has not made any specific factual allegations with respect to the inadequacy of the notice given.  The complaint states only that the rate reductions "are invalid and may not lawfully be implemented because they violate 42 C.F.R. § 447.205 and therefore are preempted by the Supremacy Clause, in that public notice of the Reductions was not given in accordance with the terms of 42 C.F.R. § 447.205."  Doc. 1, at 24-25, ¶¶ 65-66.  Legal conclusions couched as factual allegations "are not entitled to the assumption of truth," *Iqbal*, 129 S. Ct. at 1950, and therefore "'are insufficient to defeat a motion to dismiss for failure to state a claim,'" *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (citation omitted).  The Court will grant the Director's motion to dismiss Claim Three.

**IT IS ORDERED** that the Director's motion to dismiss (Doc. 28) is **granted** with respect to the 42 U.S.C. § 1983 claim for violation of Section 13(A) and Claim Three, and **denied** in all other respects.

Dated this 23rd day of March, 2012.

_____
David G. Campbell
United States District Judge